## Commonwealth v. Hebenthal

*Conrad B. Capuzzi, District Attorney*, for Commonwealth.

*John F. Wagner, Jr., Assistant Public Defender*, for defendant.

REILLY, *P. J.*, February 19, 1975—Paul Hebenthal, the above named defendant, entered a plea of guilty to a charge of armed robbery and was sentenced on May 11, 1973.

The sentence was to pay the costs, make restitution in the amount of $400 to the victim, George Anthony Grippo, and undergo imprisonment in the Diagnostic and Classification Center at Huntingdon, Pa., for not less than two and one-half years nor more than five years.

A female co-defendant, Kathryn Faye Auer, charged with the same offense also entered a guilty plea and was sentenced to make restitution to Mr. Grippo in the amount of $400 and be committed to the State Correctional Institution at Muncy, Pa., for not more than 18 months.

Mr. Hebenthal was represented by John F. Wagner, Jr., Esq. of the public defender's office.

Mr. Hebenthal appealed to the Superior Court, 391 April term, 1973. October 18, 1973 the appeal was discontinued.

On July 13, 1974, Mr. Hebenthal presented a document styled petition for writ of error coram nobis. We will treat the document as an application for relief under the Post Conviction Hearing Act.

Petitioner contends, because he received a more severe sentence than the sentence imposed upon his female co-defendant, that he was "denied equal protection of the law, due process and the sentence was arbitrary and an invidious discrimination, in violation of the Fourteenth Amendment to the Constitution of the United States."

## DISCUSSION

It is not disputed the female co-defendant received a less severe sentence than did the male defendant. It is conceded also they were equally guilty of the same crime—armed robbery.

The mischief asserted is that, because a male and a female acted jointly and in concert in the com-

mission of the same crime, they must be treated equally as to the punishment to be imposed.

The Constitution, legislatures and the courts are unable to ordain that there must be total and absolute equality between the sexes as to punishment for the same criminal act.

There is a rock imbedded principle that courts have total discretion as to the duration of sentence, limited only by statutory mandate as to maximum and subject to appellate modification only for arbitrariness, caprice, vindictiveness, or flagrant abuse of judicial discretion.

According to petitioner's theory, unless he and his female co-defendant receive the same sentence as to duration, place of confinement, accommodations and parole rights, his constitutional due process rights are violated—his sentence is discriminatory because of sex and denies him equal justice.

We are told if a sentence, imposed upon a female co-defendant, although less severe than a sentence imposed upon a male offender for the same crime, can be rationalized, then an attack upon the greater sentence because of the lesser sentence imposed upon the female will not prevail to invalidate either sentence on constitutional grounds.

Rationalizing the situation here we find the female was committed to Muncy because Muncy is the only institution available for female commitment and the Muncy Act mandates the sentence be to that institution. The sentence must provide a maximum not to exceed the statutory maximum for the particular crime. Obviously the male defendant could not be committed there. Some would consider that to offend the constitutional prohibition against cruel and unusual punishment. Nor could the female have been sent to the penitentiary.

Statistics are not available as to the number of female prisoners at Muncy who were co-defendants with male offenders sentenced for the same crime. Whatever their number, they had to receive a lesser sentence than their male companions sentenced to the penitentiary because of the no minimum sentences to Muncy. If the male prisoners in this situation prevail, we must swing the prison doors open and turn them all loose.

As an alternative to this revolting eventuality, we could follow the lead of many institutions of higher learning which have converted to coeducational arrangements. Whether dual-sex prisons are the answer is more a legislative than a judicial matter. But it would be expensive.

It seems that a strict adherence to the theory advanced in this proceeding, viz.: equality of sentence, if it is to stand at all, must be applied to males committing the same or similar crimes as well as to males and females so engaged. Thus it would follow that all criminals sentenced for the same, or even similar crimes, must receive the same, identical sentence. In other words, all sentences would be mandatorily uniform. This would work havoc with our criminal justice system, eliminate judicial discretion and create universal chaos in the administration of criminal justice.

Equal justice under law certainly does not mean exact equality of sentence. Indeed, equal justice would be denied in a very cruel way if, for example, a hardened criminal with a recidivistic record of crimes of violence and a youthful first offender had to be sentenced to the same punishment as co-defendants in the same crime.

Also, the statutory provisions providing additional penalties for multiple convictions would be nullified under a theory of equality of sentences.

Too, under the gun law, where co-defendants commit a certain crime—rape, for example—if one of the co-defendants has a gun on his person, he is subject to an additional five-year term of imprisonment. This important statute would be in jeopardy if equality of sentence is literally applied.

It has come to my attention that the U.S. Court of Appeals for the Fourth Circuit, in Richmond, Va., held "judges cannot discriminate between men and women in sentencing after conviction of similar crimes." The court reversed where a female co-defendant received a 10-year jail sentence for bank robbery while her male co-defendant received a 15-year sentence. The two to one decision ruled this was sex bias and the male defendant's sentence was discriminatory and violated equality. The dissent held the lower court sentence was valid as a proper application of the court's discretionary power.

While we are not bound by the Federal courts' decisions, except those of the United States Supreme Court, the Richmond case may give some indication as to how the wind blows.

In any event, the gist of the case at bar was touched upon in Commonwealth v. Lewis, 443 Pa. 305 (1971). In a murder case, defendant Banks received a less severe sentence than co-defendant Lewis. Both were males.

Mr. Justice Eagen stated (at page 11):

". . . In our view, discriminatory enforcement of the criminal laws is constitutionally prohibited if the discrimination is purposeful or intentional. . . .

"In the instant case, while Banks received less punishment than the appellant, Lewis, this fact, in itself, does not establish that the court acted with purposeful and intentional discrimination against

Lewis, and there is nothing else in the record to warrant such a conclusion."

Likewise, in the case at bar, there is nothing to indicate the more severe sentence imposed upon the male co-defendant Hebenthal was purposeful or intentional.

In Dunkerton, 3 A.L.R. 1614, 1618, is found:

"In the reported case (Ex Parte Dunkerton, ante, 1611) it was held that a statute establishing a state industrial farm for women was not unconstitutional because of the fact that it allowed women to be less severely punished than men convicted of the same crime. In other words, that the legislature may make a discrimination in punishment for the same offense, based entirely upon the sex of the offender. This conclusion, that the legislature may very properly determine that women convicted of crime shall be less severely punished than men convicted of the crime, seems to have been based upon the theory that the legislature, in prescribing punishment for a crime, may take into consideration and recognize the fact that the number of women who commit crimes is much smaller than the number of men committing similar crimes."

See also 8 A.L.R. 854:

"Constitutionality of statute as affected by discrimination in punishment for same offense based upon age, color, or sex.

"The present annotation supplements that to Re Dunkerton, 3 A.L.R. 1614. The only decisions in point since that annotation are: The reported case (State v. Heitman, ante, 848), which holds that a statute providing for detention of females convicted of criminal offenses on an industrial farm for an undetermined period is not violative of the 14th

Amendment of the Federal Constitution, in that other statutes provide different terms and places of imprisonment for men convicted of the same offenses . . ."

### CONCLUSIONS OF LAW

1. This application raises only questions of law. There is no necessity for an evidentiary hearing.

2. We find in this record no support for the relief sought.

3. We find no constitutional or other rights of applicant, Paul Hebenthal, to have been infringed.

For the reasons herein expressed,

### ORDER

And now, February 19, 1975, the prayer of petitioner is denied; the application is dismissed, without hearing.